# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| FRANCOIS JOHNSON, SR.,<br><br>　　　Plaintiff,<br><br>v.<br><br>CARGILL, INC.,<br><br>　　　Defendant. | No. 10-2084-JPM-dkv |

## ORDER CORRECTING THE DOCKET
## ORDER DENYING PLAINTIFF'S MOTION
## TO STRIKE THE BRANDSTETTER AFFIDAVITS
## ORDER GRANTING CARGILL'S RENEWED MOTION FOR SUMMARY JUDGMENT
## ORDER OF DISMISSAL
## ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
## AND
## ORDER DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Before the Court are the Renewed Motion for Summary Judgment filed by Cargill, Inc. ("Cargill" or "Defendant"), on October 29, 2012 (ECF No. 56), and Plaintiff Francois Johnson's ("Johnson" or "Plaintiff") Motion to Strike the Affidavits of Barry Brandstetter in Support of Defendant's Motion for Summary Judgment (ECF No. 59), filed December 3, 2012. For the following reasons, the Court DENIES Plaintiff's Motion to Strike and GRANTS Defendant's Renewed Motion for Summary Judgment.

# I. BACKGROUND[1]

On October 1, 2012, the Court issued an Order granting Defendant's first Motion for Summary Judgment (ECF No. 36) on all of Plaintiff's remaining claims except for Plaintiff's claims of race discrimination and retaliation arising from the failure to promote Plaintiff. (ECF No. 55.) Defendant's Motion for Summary Judgment on those claims was denied for the following reasons:

> First, Plaintiff's Complaint alleges claims arising both from the failure to promote him to the Production Supervisor position and from the failure to consider him for the open position of lead. Cargill's Motion for Summary Judgment addresses only the Production Supervisor position. Second, Cargill's suggestion that Plaintiff has contradicted his deposition testimony about the identity of the person who received the job of Production Supervisor is overstated. At his deposition, Plaintiff made what appear to be inconsistent statements about the identity of the person who was hired for that position. The confusion appears to arise from the fact that Cargill has chosen not to address the lead position and, therefore, the reasons why [Garry] Follis sometimes works at the Second Street Facility are not explained. Without a clear record of who received the position, the Court cannot analyze the claim under the McDonnell Douglas framework.

(Id. at 35-36 (footnotes omitted).)

On October 29, 2012, Defendant filed its Renewed Motion for Summary Judgment (ECF No. 56), supported by a legal memorandum (ECF No. 58-1), a separate Statement of Undisputed Facts (ECF No. 57), and various exhibits (ECF Nos. 57-1 to -7). On December 3, 2012, Plaintiff filed a "Motion for Leave to Respond to Defendants

---

[1] The complete procedural history of this action is stated at pages 2-6 of the Order issued on October 1, 2012. (See ECF No. 55.)

Renewed Summary Judgment," consisting of an unsigned, thirty-seven page legal memorandum (ECF No. 58),[2] an unsigned "Separate Statement of Undisputed Material Facts in Support of Its Response to Defendants Renewed [Motion for Summary] Judgment" (ECF No. 58-1),[3] and a Motion to Strike the Affidavits of Barry Brandstetter (ECF No. 59).[4] On December 20, 2012, Defendant filed a Reply in support of its Renewed Motion for Summary Judgment (ECF No. 60), a Response to Plaintiff's Statement of Undisputed Facts (ECF No. 61), its objections to the Affidavit of Francois Johnson in support of

---

[2]     Plaintiff's Motion for Leave to Respond is unnecessary because the adverse party is always entitled to respond to a motion for summary judgment. The Clerk is directed to modify the docket to reflect that Plaintiff's filing is a response to Defendant's Renewed Motion for Summary Judgment rather than a stand-alone motion.

        Local Rule 7.2(e) provides that, "[u]nless otherwise ordered by the Court, memoranda in support and in opposition to motions shall not exceed 20 pages in length . . . ." Plaintiff did not seek leave to exceed the page limitation. Plaintiff also did not sign his legal memorandum, as required by Federal Rule of Civil Procedure 11(a). In the interest of expediting this matter, the Court declines to strike Plaintiff's legal memorandum, to order him to comply with the page limitation, and to sign the document. However, as will be addressed infra, the Court declines to consider any factual matters that are not included in Defendant's Statement of Undisputed Facts or Plaintiff's Response to that Statement.

[3]     Although both Plaintiff's Statement of Undisputed Facts and Plaintiff's legal memorandum refer to exhibits, no exhibits are attached to either document. The Court will assume that the exhibits to the Motion to Strike the Brandstetter Affidavits are those exhibits referred to in Plaintiff's Response to Defendant's Renewed Motion for Summary Judgment.

[4]     Plaintiff's Motion to Strike the Brandstetter Affidavits is not well taken. The Brandstetter Affidavits state that they were based on personal knowledge and a review of Company documents. (See, e.g., Aff. of Barry Brandstetter ("2012 Brandstetter Aff."), ECF No. 57-3, ¶ 1.) Brandstetter is the Farm Services Group Leader, with management responsibility for the Second Street Facility, and, therefore, is competent to testify about the matters in his affidavits. Many of Plaintiff's objections are meritless, including his contention that Brandstetter lacks personal knowledge of whether another Cargill employee, George Richmond, is African American. (See ECF No. 59 at 3.) Plaintiff also has not explained his contention that the affidavits submitted by Brandstetter are not consistent. Plaintiff's Motion to Strike is DENIED.

Plaintiff's Response to Defendant's Renewed Motion for Summary Judgment (ECF No. 62),[5] and its Objection to Exhibit 5 to Plaintiff's Response (ECF No. 63).[6]

## II. UNDISPUTED MATERIAL FACTS

The facts relevant to Defendant's Renewed Motion for Summary Judgment are as follows[7]:

### Johnson's Employment at Cargill and Previous Litigation[8]

1.    During all relevant times, Plaintiff, Francois Johnson ("Johnson"), has worked for Cargill as a weigher/ production employee at Cargill's grain elevator located on Second Street in Memphis, Tennessee (the "Second Street Facility").

---

[5]    Plaintiff has not responded to this filing, and Cargill's objections are well taken. Because Plaintiff has not cited his affidavit in his Response to Defendant's Statement of Undisputed Facts, the Court has not considered that document with one limited exception that will be addressed infra.

[6]    The exhibits attached to the Motion to Strike the Brandstetter Affidavits are not arranged in chronological order. It appears that Defendant is actually referring to Exhibit 6, a six-page computer-generated document that both parties refer to as the application of Garry Follis for the position of Production Supervisor. (See ECF No. 59-1 at 41-46; ECF No. 57-3 at 30-35.) That document is not self-explanatory, and neither party has stated what some of the entries mean. For example, the document lists an "Application Date" of "Sep[tember] 5, 2009" (ECF No. 59-1 at 41), yet the document also refers to "[i]nformation provided by the recruiter on January 3, 2010" and to an attachment, including a resume, dated "8/25/09" (id. at 42). Defendant has objected to Johnson's arguments based on the dates in this document on the ground that "Johnson has no personal knowledge of what the dates contained in Mr. Follis's resume represent, and Johnson's statements about these dates are inadmissible pursuant to Rule 602 of the Federal Rules of Evidence." (ECF No. 63 at 2.) Plaintiff has not responded to this objection, which is well taken. Because the computer-generated resume is not self-explanatory and because Defendant has not explained the portions of the document that are highlighted by Johnson, the Court will not rely on the document in deciding the pending Motion.

[7]    Given that Plaintiff's separate Statement of Undisputed Facts, with few exceptions, simply reproduces the text of Defendant's Statement of Undisputed Facts without stating whether or not Plaintiff disputes the fact, the Court will assume, for the purposes of this Order, that Plaintiff does not dispute any of Defendant's proposed findings unless he has made a statement that appears to contradict or modify Defendant's proposed finding.

[8]    The Court does not include Defendant's proposed factual findings that do not pertain to the remaining claims in this action.

2.    In this position, Johnson and other production employees are responsible for, among other things, weighing and measuring grain that is brought to Cargill and cleaning up the grain elevator after deliveries are made.

3.    During all times relevant to this lawsuit, Cargill employed between 12 and 15 production employees at the Second Street Facility.

4.    During all relevant times, all but one production worker at the Second Street Facility was African-American.

5.    Johnson has been a member of Teamsters Local 667 (the "Union") during all times relevant to this action, and has served as a Union Steward since approximately 2000.

6.    All production employees at the Second Street Facility are also members of the Union.

7.    During all relevant times, the terms and conditions of employment for union members were governed by the Agreement between Cargill, Incorporated and Teamsters Local No. 667, effective March 1, 2006 to February 28, 2009 (the "CBA").

8.    On January 27, 2007, Johnson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in which he alleged that Cargill had assigned him and other minority employees to work in areas contaminated with asbestos because of their race.

9.    On January 14, 2008, Johnson and eight other individuals filed a joint Complaint against Cargill, asserting that Cargill discriminated against them on the basis of their race by requiring them to work in asbestos-contaminated areas and retaliated against them for complaining about alleged discrimination to TOSHA and/or the EEOC, among other claims (the "Asbestos Litigation").[9]

10.   On July 30, 2009, Cargill filed a motion for summary judgment as to all claims asserted [by Johnson] in the Asbestos Litigation.

---

[9]    The joint action was severed into eight separate lawsuits.

11.  On March 17, 2010, [United States District Judge S. Thomas Anderson] granted Cargill's motion and dismissed Johnson's case in its entirety. The order further certified that an appeal of [that] action would not be in good faith and held that Johnson could not proceed on appeal *in forma pauperis*.[10]

## Johnson's EEOC Charge and Complaint

12.  On September 24, 2008, Johnson filed a charge with the EEOC alleging that Cargill retaliated against him by no longer providing lunch money to union members and closing the Second Street Facility on February 18, 2008.

13.  On July 8, 2009, Johnson filed a charge with the EEOC alleging that Cargill discriminated and retaliated against him by requiring him to attend mandatory safety meetings in the morning and requiring him to clock out during meal breaks. On October 20, 2009, Johnson amended this EEOC charge to include a charge of discrimination and retaliation based on Cargill's failure to promote Johnson to the position of [Operational/Second Street] Supervisor.[11]

14.  On February 5, 2010, Johnson and eight other individuals filed a joint Complaint against Cargill, asserting that Cargill had discriminated against them on the basis of their race and retaliated against them for filing their prior EEOC charge and the Asbestos Litigation by requiring them to attend morning meetings and clock out during meals, and failing to allow them to apply for the [positions of lead man and] Production Supervisor.[12]

15.  On March 19, 2010, Johnson and the eight other plaintiffs filed a motion to amend their complaint, and filed an amended complaint including the original allegations and an allegation that Cargill retaliated against them for filing the prior EEOC charge and the

---

[10]    Plaintiff's previous case was <u>Johnson v. Cargill, Inc.</u>, No. 08-2052-STA-dkv (W.D. Tenn.), <u>appeal dismissed</u>, No. 10-5455 (6th Cir. Jan. 25, 2011).

[11]    The Court has amended this proposed finding to reflect the actual language in Plaintiff's EEOC charge. (<u>See</u> ECF No. 1 at 7.)

[12]    The Court has amended this proposed finding to reflect the language used in Plaintiff's Complaint.

Asbestos Litigation based on Cargill's temporary denial
of lunch money to union employees and Cargill's closure
of the Second Street Facility on Presidents' Day in 2008.

. . . .

### Johnson's Remaining Claims

23.  The CBA governs the terms and conditions,
including the posting requirements, hiring and
promotions, only for production and maintenance
employees. These positions consist of (a) Lead
Maintenance; (b) Maintenance Person; (c) Weigher; (d)
Mixer; (e) Utility; and (f) Probationary Employees.

24.  Cargill operates two grain elevators in
Memphis, Tennessee: the Second Street Facility and a
separate grain facility located at 1877 Channel Avenue,
Memphis, Tennessee 38113 (the "President's Island
Facility").

25.  The production employees at both facilities are
supervised by Production Supervisors. Production
Supervisors are not part of the bargaining unit.

26.  Production Supervisors are supervised by a
Cargill Farm Services Center ("FSC") Manager who may
manage multiple Cargill Facilities.

27.  The position of "Lead Maintenance" at the
Second Street Facility is specifically enumerated under
the CBA and is governed by the selection procedures of
the CBA. There is no "Lead Person" role at Second Street.

28.  Since at least 2008, George (Jack) Richmond, a
Union member, has been the Lead Maintenance employee at
the Second Street Facility, pursuant to the provisions of
the CBA. Mr. Richmond is African American.[13]

---

[13]     Plaintiff states that, "[s]ince at least 2008, George Richmond has
been the Lead Person. (Exh #25) (Johnson Dep. 43:4-17)." (Pl.'s Statement of
Undisputed Facts ("Pl.'s Facts"), ECF No. 58-1, ¶ 28.) Exhibit 25 to the Motion
to Strike the Brandstetter Affidavits is Plaintiff's amended EEOC charge, which
is not admissible as substantive evidence and which, in any event, does not
support Plaintiff's proposed finding. (See ECF No. 59-2 at 52.) Plaintiff's
Exhibit 15 contains the cited portion of his deposition. (See id. at 24.) As
Defendant has pointed out, Plaintiff has not disputed that the position of "Lead
Maintenance" is enumerated under the CBA and that there is no position of "Lead
                                                            (continued...)

29.  Cargill hired Garry L. Follis as a production employee at the President's Island Facility in or around September 2007. Mr. Follis was designated as a Lead Person at the President's Island Facility and assisted the Production Supervisor in managing the other production employees. Mr. Follis was not a member of a union.[14]

30.  On August 27, 2009, Cargill terminated the employment of both of its Production Supervisors at the Second Street Facility. The FSC Manager over the Second Street Facility resigned shortly thereafter.[15]

31. On September 3, 2009 Cargill posted an opening for a Production Supervisor at its Second Street Facility on its Career Marketplace web page on the company Intranet.[16]

---

[13]     (...continued)
Person" at the Second Street Facility. Defendant further states that it "does not dispute that the production employees at the Second Street Facility refer to the Lead Maintenance position as the 'Lead Person.'" (ECF No. 61 at 1-2.)

[14]     Plaintiff states that "Cargill did not hire Garry Follis as a Production employee at President Island Facility in or around September 2007. In 2007 to 2008 Follis was only a temporary service worker working for Smith & Dole contractor services (see Exh #8, Coburn Admission request #15)." (Pl.'s Facts, ECF No. 58-1, ¶ 29.) The Request for Admission cited by Plaintiff states: "Admit or deny defendants that Gary [sic] Follis began his employment at the President Island Facility in 2008 as a Cargill hired employee and not as a Temporary employee through a temporary agency," and Cargill responded, "Deny." (ECF No. 59-2 at 1.) Given the compound, convoluted wording of the question, and the reference to Follis' hiring in 2008, it is unclear what Cargill's denial means. It also is unclear what difference it makes if Follis was initially hired through a temporary agency.

[15]     Plaintiff states that, "[o]n August 27, 2009 Cargill terminated the employment of both of its Production Supervisors at the Second Street Facility. The FSC Manager over the Second Street Facility resigned sometime around November, but it was shortly thereafter." (Pl.'s Facts, ECF No. 58-1, ¶ 30.) The only authority cited is paragraph 12 of the 2012 Brandstetter Affidavit, which does not support Plaintiff's assertion that the FSC Manager resigned in November 2009.

[16]     Plaintiff states that,

[i]n October 2009 during the grievance meeting Plaintiff found out a production supervisors position was posted, but no specific date was given at that meeting, was during discovery that plaintiff found out September 3, 2009 Cargill posted an opening for a Production Supervisor at its Second Street Facility on its Career Marketplace web page on the company Intranet.

(continued...)

8

32. Posting a position on the Career Marketplace page is Cargill's normal process for soliciting applications from existing Cargill employees, and all Cargill employees, including Plaintiff, have access to the Career Marketplace page.[17]

33. The posting for this position included the following required qualifications: (1) four years post-secondary education or equivalent experience; (2) minimum two years grain operations experience; (3) experience managing an effective EHS program; (4) strong communications and listening skills; (5) excellent interpersonal skills; (6) strong organizational skills and attention to detail; and (7) knowledge of government regulations.

34. Cargill considered only persons who applied using Cargill's procedures for this position.[18]

---

[16]     (...continued)

(Pl.'s Facts, ECF No. 58-1, ¶ 31.) It appears that Plaintiff does not dispute this proposed finding.

[17]     Plaintiff states that, "Cargill does not post ALL positions on the Career Marketplace, because the Production Supervisor job at President Island was not posted." (Pl.'s Facts, ECF No. 58-1, ¶ 32.) He cites the 2012 Brandstetter Affidavit, which states that, "[w]e did not post the Production Supervisor position at the President's Island Facility on Career Marketplace; rather, we considered those individuals who had recently applied for the same position at the Second Street Facility, including Mr. Follis." (ECF No. 57-3 ¶ 16.) The proposed factual finding states that posting on the Career Marketplace is Defendant's "normal process," not that it is followed in every instance. In this case, Defendant already had a pool of applicants interested in a Production Supervisor position in Memphis because of the recent opening at the Second Street Facility.

[18]     Plaintiff states that "Cargill does not consider persons who apply using procedures for this position. Cargill transferred Tricie Seawright who did not apply at ALL for the September 3, 2009 position, only for her position in 2008 at [P]resident's Island." (Pl.'s Facts, ECF No. 58-1, ¶ 34.) In support, Plaintiff cites his response to paragraph 59 of Defendant's Statement of Undisputed Facts in support of its first Motion for Summary Judgment (ECF No. 59-1 ¶ 59), which cited paragraph 8 of the 2011 Brandstetter Affidavit for the proposition that, "Ms. Seawright applied for the Production Supervisor position in September 2008." The cited portion of the 2011 Brandstetter Affidavit does not state that Seawright applied for the position in 2008. It states that, "[w]e offered the Production Supervisor position at the Second Street Facility to Tricie Seawright, an African-American female, who at that time was working as a Production Supervisor at Cargill's President's Island facility. I received Ms. Seawright's resume from Talent Recruiting as one of the applicants for the position." (Aff. Of Barry Brandstetter ("2011 Brandstetter Aff."), ECF No. 38-6,
(continued...)

9

35. While Cargill was in the process of hiring a new Production Supervisor and also filling other management positions at the Second Street Facility, Cargill asked Garry Follis to temporarily supervise employees at the Second Street Facility. At that time, Mr. Follis was a Lead Person at the President's Island Facility.[19]

36. Mr. Follis applied for the position of Production Supervisor at the Second Street Facility on September 5, 2009.[20]

37. Johnson never applied for the Production Supervisor Position in September of 2009.

---

[18]    (...continued)
¶ 8.) Defendant previously advised that the statement that Seawright applied for the position in September 2008 was a typographical error. (See ECF No. 41 at 9 n.5.)

[19]    Plaintiff states that

Cargill was not in the process of hiring a new Production Supervisor when Follis came in August 2009, but the documents prove Follis applied on August 25, 2009, two days before the 2 Production Supervisors [were] terminated on August 27, 2009. At that time, Follis was a Leadman but was placed on the newly created Attendance Policy. Then on September 3, the company posted the new position.

(Pl.'s Facts, ECF No. 58-1, ¶ 35.) Plaintiff cites to his Exhibit 6. (Id.) For the reasons stated supra at note 6, Plaintiff lacks personal knowledge to interpret the dates on Exhibit 6. The Court has stated that it will not consider Exhibit 6, which was submitted by both parties, for any purpose. See supra note 6. Defendant states that it "does not dispute that in August 2009, it placed Mr. Follis' name on an Attendance Policy, directing the production employees to call Mr. Follis if they were going to be late or absent." (ECF No. 61 at 4.) Issues related to the attendance policy are not relevant to Plaintiff's claims of failure to promote. Plaintiff has cited no support for his claim that Follis began working at the Second Street Facility in August 2009.

[20]    Brandstetter cites to the computer-generated application (see ECF No. 57-3 ¶ 14), which will be disregarded. Brandstetter's representation about when Follis applied, which is based on his personal knowledge and a review of relevant documents (see id. ¶ 1), will be considered.

Plaintiff states that, "[t]he defendant chose not to disclose that Follis applied on August 25, 2009, but lied that he applied on September 5, 2009. (see previous undisputed fact #35) this is a contradiction of Brandstetters Affidavit #9, 14 Exh #7 Brandstetters December 12, 2011, and Brandstetter 2012 Aff paragraph 14)." (Pl.'s Facts, ECF No. 58-1, ¶ 36.) Plaintiff is, again, relying on his Exhibit 6, about which he lacks personal knowledge. That document will be disregarded for the reasons previously stated. See supra note 6. The purpose of Plaintiff's citation to paragraph 9 of the 2011 Brandstetter Affidavit is unclear, as that paragraph supports Defendant's position.

38. Cargill did not hire Mr. Follis as the Production Supervisor at the Second Street Facility. Instead, it offered the position to Tricie Seawright, an African American female, who at that time was working as a Production Supervisor at the President's Island Facility. This left an opening for a Production Supervisor at President's Island.[21]

39. Cargill did not post the Production Supervisor position at the President's Island Facility on Career Marketplace; rather, it considered those individuals who had recently applied for the same position at the Second Street Facility, including Mr. Follis.[22]

40. Mr. Follis has four years of post-secondary education, significant previous management experience, and is certified in the government regulations relevant to Cargill's grain elevators.[23]

---

[21]    Plaintiff states that, "Mr. Follis was not hired as a Cargill Production Supervisor until after January 3, 2010 (see exh #6). Follis application states that the recruiter did not receive Follis resume until January 3, 2010. The resume was attached to the application, this is a suspicious action." (Pl.'s Facts, ECF No. 58-1, ¶ 38.) Plaintiff is relying on his Exhibit 6, about which he lacks personal knowledge. That document will not be considered for the reasons previously stated. See supra note 6. The Court notes that Plaintiff apparently no longer contends that Follis was hired for the position of Production Supervisor at the Second Street Facility.

[22]    Plaintiff states that, "it was a suspicious act that Follis applied on August 25, 2009, but was qualified for President's island instead, even though Seawright never applied for the position on September 3, 2009." (Pl.'s Facts, ECF No. 58-1, ¶ 39.) Plaintiff's response relies on two factual propositions that the Court has rejected: that Follis applied for the Production Supervisor position on August 25, 2009, and that Seawright did not apply for the Production Supervisor position at the Second Street Facility in 2009. Plaintiff lacks personal knowledge of, and has no admissible evidence to support, his statements.

[23]    Plaintiff states that, "Mr. Follis resume claims he has four years of post-secondary education, significant previous management experience, and is certified in the government regulations relevant to Cargill's grain elevators. (2012 Brandstetter Aff. ¶ 17)." (Pl.'s Facts, ECF No. 58-1 ¶ 40.) Plaintiff further states that "Mr. Follis application (exh #4) under the topic skills states no specific skills for the job, and as has been proven by direct evidence in form of sworn admission (exh.# 8, request No. 14)" showing that "defendant denied Follis was a Cargill employee in 2008, which shows a lie about September 2007 on his resume. (exh 5)." (Id.) Plaintiff's Exhibit 4 is a nineteen-page excerpt from his Response to Defendant's Statement of Undisputed Facts in support of its first Motion for Summary Judgment, and Plaintiff has not cited to any specific portion of that document. Plaintiff's Exhibit 8, which is Defendant's Response to Plaintiff's Request for Admission number 14, asked Defendant to "[a]dmit or deny that (exh. #14) a true and correct copy of the defendants
(continued...)

41.  Cargill did not consider Johnson for the Production Supervisor position at President's Island because he did not apply for the Production Supervisor position that Cargill had posted for the Second Street Faciilty (where Johnson worked) and Cargill was not aware that Johnson had any interest in the position.

42.  Cargill made the decision to hire Mr. Follis as the Production Supervisor of the President's Island Facility, effective November 1, 2009. Because Cargill was still searching for an FSC Manager at the Second Street Facility, Mr. Follis continued to temporarily spend time helping out as a Production Supervisor at the Second Street Facility as well.[24]

43.  When Cargill hired an FSC Manager for the Second Street Facility, Mr. Follis returned to his full-time position as Production Supervisor at the President's Island Facility. During this time, Mr. Follis was never permanently assigned to work at the Second Street Facility.[25]

---

[23]    (...continued)
Position Posting Guidelines." (ECF No. 59-2 at 1.) Plaintiff may mean to refer to Defendant's Response to Request for Admission number 15, but, as previously stated, that response does not say what Plaintiff believes it says. See supra note 14. Plaintiff's does not raise a triable issue about this proposed factual finding.

[24]    Plaintiff states that, "[t]his is a contradiction to Cargill response to EEOC (Exh #3, footnote bottom pg. 3 states October 1, 2009, dated July 2, 2012 and (exh #6) shows a contradiction of January 3, 2010 was when the recruiter received Follis resume." (Pl.'s Facts, ECF No. 58-1, ¶ 42.) Plaintiff's Exhibit 6 will not be considered for the reasons previously stated. See supra note 6. In a letter to the EEOC, Defendant's attorneys stated that "Cargill promoted Mr. Follis into the Production Supervisor position vacated by Ms. Seawright on October 1, 2009." (ECF No. 59-1 at 18.) Although the wording is imprecise, it appears that Seawright vacated the position of Production Supervisor at President's Island on October 1, 2009, not that Follis assumed that position on October 1, 2009. The Court notes that Plaintiff no longer appears to dispute that Follis continued helping out at the Second Street Facility on a temporary basis.

[25]    Plaintiff states that, "Follis was not a full-time Production Supervisor until after January 3, 2010. So this too is a lie. (Exh #4, Follis application)." (Pl.'s Facts, ECF No. 58-1, ¶ 43.) Plaintiff's Exhibit 4 is his nineteen-page response to Defendant's Statement of Undisputed Facts in support of its first Motion for Summary Judgment. The date of January 3, 2010, appears in Plaintiff's Exhibit 6, which will not be considered. See supra note 6. The Court notes that Plaintiff has abandoned his previous position that Follis was hired to work at the Second Street Facility.

44.  Johnson alleges that he was not given the
opportunity to apply for the position because Cargill did
not give notice that the position was available.

. . . .

46.  Johnson did not ask anyone at Cargill how he
would apply for the position before complaining that he
was unaware of the position.[26]

47.  Johnson admits that when he first inquired
about the application process, Cargill management
explained to him the process for applying for open
positions on Cargill's intranet and informed him that he
could use Cargill's computers to do so.[27]

. . . .

---

[26]    Plaintiff responds that he,

did not ask anyone if they knew how to use the Intranet, because
while the 2 Production Supervisors were suspended in August, Chris
Stansbury immediately placed Garry Follis on the attendance policy,
and now the reason for that is clear. On August 25, 2009, Follis
applied for the job that was not yet open, but Follis had an advance
notice and put in his application on August 25, 2009. This new
evidence just discovered expose the Defendant claim, Follis was
there in August 2009 until Ms. Seawright transitioned, but the
problem with that is there was no position until September 3, 2009.
(see Exh #1, dated 10/16/2012, pg. 3 paragraph 2 and 3) (Exh #25,
Johnson Dep 111:4-13).

(Pl.'s Facts, ECF No. 58-1, ¶ 46.) Plaintiff's Exhibit 1 is Defendant's Reply in
support of its Motion for Summary Judgment in a case involving Plaintiff's co-
worker, Paula Coburn. The cited pages are part of a discussion about the plant
closure on Presidents' Day in 2008, which has nothing to do with the failure-to-
promote claims. Plaintiff's Exhibit 25 is his amended EEOC charge, which was
filed on October 20, 2009, not his deposition. Plaintiff may be referring to his
Exhibit 27, but page 114 of his deposition offers no support for his proposed
finding. (The reference on page 114 of Plaintiff's deposition about the failure
to post the position refers to physically posting it on a wall, not on the
company Intranet.) Plaintiff's suggestion that it would have been futile to apply
for the Production Supervisor position at the Second Street Facility is entirely
speculative and ignores the fact that the position was given to Seawright, not
Follis. Plaintiff does not dispute that he did not ask anyone at Cargill how to
apply for open positions at the Company.

[27]    Plaintiff appears to agree with the proposed finding and also states
that "this was during the meeting about the October 1, 2009 grievance. (exh #26,
97 through 108:1-17)." (ECF No. 58-1 at 7.) It is unclear how "the October 1,
2009 grievance" is relevant to Plaintiff's failure-to-promote claim.

13

50. Johnson admits that George Richmond held the position of Lead Maintenance during the time Mr. Follis was temporarily assisting in supervising the employees at the Second Street Facility.[28]

51. Johnson believes he is more qualified for the position of Production Supervisor because he has more knowledge of the Second Street Facility due to his lengthy time at the facility.

52. Johnson admits that he has no post-secondary education.

53. Johnson admits that he never worked as a supervisor at Cargill.

54. Johnson admits that he never worked as a supervisor at any other employer aside from a second job he held at a cleaning service.[29]

55. Johnson has never managed an EHS Program and, in fact, at the time of his deposition did not know what an EHS Program was.

---

[28]    Plaintiff states that,

[t]he Defendant tried to sneak this in claiming that Johnson admits that George Richmond held the position of Lead Maintenance during the time Mr. Follis was temporarily assisting in supervising the employees at the Second Street Facility, as usual taking it out of context. (Johnson Dep. 103:4-13). defendant getting desperate (see 102, 103:1-12) Johnson has never referred to George Richmond as a Lead Maintenance. This shows that the Defendant is desperate saying anything.

(Pl.'s Facts, ECF No. 58-1, ¶ 50.) Plaintiff's point is unclear. Any claim that Follis was given authority that should have been Richmond's is immaterial to Plaintiff's claims that Defendant failed to promote him.

        In the excerpt from Plaintiff's deposition that Defendant cites, Plaintiff refers to Richmond as "lead man." The official title for the position, which is specified in the CBA, is "Lead Maintenance." See supra at 7; (see also ECF No. 57 ¶¶ 23, 27, 28). Defendant has stated that production employees at the Second Street Facility commonly refer to the Lead Maintenance as the "Lead Person." (ECF No. 61 at 1-2.)

[29]    Plaintiff states that "Johnson admits that he has never worked as a supervisor at Cargill only as a lead person on second shift when transferring grain, and a supervisor at a second job held at a cleaning service. (Johnson Dep. 118:9-120:25)." (ECF No. 58-1 at 8.) The deposition excerpts cited do not state that Plaintiff worked as a "Lead Person" on the second shift at Cargill.

56.   Johnson admits that he has no knowledge of the specific governmental regulations that apply to Cargill's grain elevators.

57.   Johnson admits that no Cargill employee ever gave a reason for not posting the position of Production Supervisor.[30]

58.   Johnson bases his contention that Cargill did not post this position for retaliatory reasons on the temporal proximity between the filing of the Asbestos Litigation and his EEOC charge filed in 2008 and Cargill's failure to post the position in September 2009.

59.   Other than this timing, the only reason Johnson has to support his contention that Cargill was retaliating against him is the fact that Cargill management thought certain employees "were considered troublemakers."

(ECF No. 57 (citations omitted).)

### III. THE LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment "bears the initial burden of demonstrating the absence of any genuine issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448 (6th Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing

---

[30]   As previously noted, this finding refers to physically posting a job listing on a wall, not a posting on the company Intranet. See supra note 26.

a triable issue of material fact." Id. at 448-49 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

"In considering a motion for summary judgment, [a court] must draw all reasonable inferences in favor of the nonmoving party." Phelps v. State Farm Mut. Auto. Ins. Co., 680 F.3d 725, 730 (6th Cir. 2012) (citing Matsushita Elec., 475 U.S. at 587). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986)). "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in [his] favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 252).

The standards for establishing that a factual proposition is undisputed are stated in Rule 56(c)(1), which provides as that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or

that the adverse party cannot produce admissible evidence to support the fact.[31]

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Under Federal Rule of Civil Procedure 56(e):

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

(4) issue any other appropriate order.

Although Plaintiff has submitted many documents and several affidavits in his Response to Defendant's Renewed Motion for Summary Judgment, few of those documents are cited in his Response to Defendant's Statement of Undisputed Facts. When evaluating a motion for summary judgment, "[t]he court need consider only the

---

[31] <u>See also</u> LR 56.1(b) (describing the responsibility of the non-moving party in response to the moving party's statement of undisputed facts).

cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). With few exceptions, the Court has considered only those portions of the exhibits submitted by Plaintiff that are referred to in his Response to Defendant's Statement of Undisputed Facts. The Court also declines to consider any factual statements in Plaintiff's legal memorandum that were not addressed in Defendant's Statement of Undisputed Facts and Plaintiff's Response to that Statement.[32]

## IV. ANALYSIS

In <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), the Supreme Court established a framework for evaluating evidence in discrimination cases where, as in this case, the plaintiff has no direct evidence of discrimination. That process has been summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reasons for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

<u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981) (citations omitted). This standard is used for disparate treatment

---

[32]    Under the Local Rules, Plaintiff could have presented his own statement of undisputed facts, supported by appropriate record citations. <u>See</u> LR 56.1(b).

and retaliation claims under laws proscribing employment discrimination, including Title VII. See Hunter v. Sec'y of U.S. Army, 565 F.3d 986, 995-96 (6th Cir. 2009); Martin v. Toledo Cardiology Consultants, Inc., 548 F.3d 405, 411 (6th Cir. 2008).[33] "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

## A.    Plaintiff's Disparate-Treatment Claim

To establish a prima facie case of race discrimination in the context of a failure-to-promote claim, a plaintiff must show that "(1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions." Dews v. A.B. Dick Co., 231 F.3d 1016, 1020-21 (6th Cir. 2000). Defendant contends that Plaintiff cannot establish a prima facie case for any available position. (ECF No. 56-1 at 9-15.)

### 1.    Lead Maintenance/Lead Person Position

Defendant first argues that no Lead Maintenance position at the Second Street Facility was open during the relevant time. (Id. at 9-10.) A failure-to-promote claim requires an open position. See

---

[33]    Plaintiff has also asserted claims under 42 U.S.C. § 1981 and the Tennessee Human Rights Act (the "THRA"), Tenn. Code Ann. §§ 4-21-101 et seq. (ECF No. 1 at 1; ECF No. 3 at 1, 5, 6.) The standards for evaluating an employment discrimination claim under 42 U.S.C. § 1981 and the THRA mirror those under Title VII. See Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 593 (6th Cir. 2007). Forty-two U.S.C. § 1981 encompasses retaliation claims. CBOCS W., Inc. v. Humphries, 553 U.S. 442, 457 (2008).

Nguyen v. City of Cleveland, 229 F.3d 559, 565 (6th Cir. 2000); Anderson v. Premier Indus. Corp., No. 94-3454, 1995 WL 469429, at *7 (6th Cir. Aug. 7, 1995) (per curiam).

The position of Lead Maintenance at the Second Street Facility, which is governed by the CBA, was held by George Richmond during the events at issue. There was no open Lead Maintenance position at the Second Street Facility and, therefore, Plaintiff cannot establish a prima facie case based on Defendant's failure to consider him for the position.

It also is undisputed that there is no formal position of "Lead Person" at the Second Street Facility, although production workers at that facility may have referred to the person holding the position of Lead Maintenance as the "Lead Person." See supra note 13.[34] Defendant asking Follis, the Lead Person at the President's Island Facility, to temporarily supervise the production workers at the Second Street Facility does not establish that Defendant created a new position of "Lead Person" at that facility. It is undisputed that Follis' assignment to the Second Street Facility was temporary and terminated when the positions of

---

[34] Even Production Supervisors apparently sometimes refer to the Lead Maintenance position as "Lead Man." Plaintiff has submitted the Affidavit of Tricie Seawright, in which she referred to the position held by George Richmond as "Lead Person." (Aff. of Tricie Seawright, ECF No. 59-2, ¶ 3.) That Affidavit does not raise a triable issue because there is no dispute that Richmond is a union member who holds the position of Lead Maintenance.

Although Plaintiff submitted Seawright's Affidavit, he ignores other significant statements made in that filing. According to Seawright, Plaintiff stated that "he wouldn't do that job for all the money in the world" when asked if he was interested in training as a substitute "Lead Person." (See id. ¶¶ 4-9.)

Production Supervisor and FSC Leader at the Second Street Facility had been filed. See supra p. 12 and note 25.[35]

Because there was no open position of Lead Maintenance or Lead Person at the Second Street Facility during the relevant time, Plaintiff cannot establish a prima facie case on this aspect of his failure-to-promote claim. Defendant is entitled to summary judgment on Plaintiff's disparate-treatment claim based on the failure to promote Plaintiff to Lead Maintenance or "Lead Person."

### 2. Production Supervisor Position

Next, Defendant states that Plaintiff cannot establish a prima facie case on his failure-to-promote claim regarding the Production Supervisor position because he did not apply for that position. (ECF No. 56-1 at 10-11.) Ordinarily, a plaintiff bringing a failure-to-promote or failure-to-rehire claim must establish that he applied for the position in question. See Dews, 231 F.3d at 1020. "The purpose of this application element is to eliminate a common non-discriminatory reason for rejecting a job application; his failure to apply." Allen v. Deerfield Mfg. Inc., 424 F. Supp. 2d 987, 994 (S.D. Ohio 2006).

The United States Court of Appeals for the Sixth Circuit has recognized limited circumstances in which an employee will not be

_____

[35]     Plaintiff's lengthy response to this argument (ECF No. 58 at 19-23) is unclear and is based on his Exhibit 6, which the Court has declined to consider, see supra note 6. Many of the factual statements in this portion of Plaintiff's legal memorandum are not supported by citations to the record.

required to submit a formal application for an open position. Wanger v. G.A. Gray Co., 872 F.2d 142, 145 (6th Cir. 1989).

> These circumstances include an environment created by the employer in which prospective applicants understand that a formal application would be futile because discrimination is so entrenched or pervasive. For this exception to apply, a pervasive, consistent, and continuing pattern or practice of discrimination must be shown to excuse an applicant from formally applying for the position. Also included is the situation where the employer has a practice of hiring without asking for applications or posting the opening. In this circumstance, a plaintiff must show that he would have applied for the position had he been aware of it.

Allen, 424 F. Supp. 2d at 994 (citations omitted); see also Dews, 231 F.3d at 1022.

When a formal application is not required, "the plaintiff can establish the application requirement of a prima facie case by showing that, had [he] known of an [] opening, [he] would have applied." Wanger, 872 F.2d at 146 (citation omitted) (internal quotation marks omitted). In order for a plaintiff "to establish that he or she would have applied for the position if they had been aware of it, however, the employee must establish that [he] had shown more than a general interest in the position." Id.; see also Day v. Crystal Co., 471 F. Supp. 2d 874, 890 (E.D. Tenn. 2007) (granting summary judgment to the defendant where the plaintiff expressed only a general interest in open position).

It is undisputed that Plaintiff did not apply for the position of Production Manager at the Second Street Facility. It is, therefore, necessary to consider whether some exception to the

application requirement covers this case. Defendant posted the opening on the Career Marketplace page of the Company Intranet, which is available to all employees and considered only applicants who applied using its procedures. It is undisputed that posting a position on the Career Marketplace is Defendant's ordinary procedure for soliciting applications from current employees for open positions. See supra p. 9.

Plaintiff contends that he did not apply for the position because he did not know that there was an opening. (See Johnson Dep., ECF No. 57-1, at 93:10-14.) According to Plaintiff, he and the other, mostly African American, union members were never informed that Cargill posted available positions on its intranet site. (See ECF No. 58 at 7-8.) It is also undisputed, however, that Plaintiff did not ask anyone at Cargill how to apply for vacant positions and that, when Plaintiff first asked about the application process, management explained the process to Plaintiff and told him that he could use Cargill's computers for that purpose. See supra p. 13.

In his Response to Defendant's Renewed Motion for Summary Judgment, Plaintiff suggests that he did not apply for the Production Supervisor position because it was obvious from the fact that Follis had recently been designated as the contact person when production workers were going to be late or absent that an application would be futile. (See ECF No. 58 at 24.) Plaintiff has

23

not cited to any portion of the record in which he provided that explanation for his failure to apply for the Production Supervisor position. At his deposition, Plaintiff testified that "[w]hat I'm alleging in my complaint . . . is that the company denies promotions by not giving us the opportunity, you know, of a notice that the position was available." (Johnson Dep., ECF No. 57-1, at 93:10-14; see also Aff. of Francois Johnson ("Johnson Aff."), ECF No. 59-2, ¶¶ 2-3.) Plaintiff raised no objection to Defendant's proposed finding that Plaintiff did not apply for the Production Supervisor position because he did not know there was an opening. (See Pl.'s Facts, ECF No. 58, ¶ 44.)

In essence, Plaintiff has rationalized his failure to apply by arguing that Defendant would not have hired him anyway. Plaintiff, however, has not established the existence of "a pervasive, consistent, and continuing pattern or practice of discrimination," Allen, 424 F. Supp. 2d at 994, that would make an application futile. To the contrary, that fact that Defendant hired Seawright, an African American, for the Production Supervisor position undercuts Plaintiff's claim of pervasive racial discrimination.[36]

Even if it were appropriate to apply the modified application standard, Plaintiff has come forward with no evidence to establish

---

[36] Even if it were assumed that Defendant wanted to promote Follis to some open management position, that does not establish the general climate of discrimination required to excuse an application. Plaintiff also overlooks the fact that Follis did not get the Production Supervisor job at the Second Street Facility.

that he would have applied for the position of Production Supervisor had he known of the opening. The record is devoid of evidence that Plaintiff expressed even a general interest in the position of Production Supervisor. Plaintiff did not even ask anyone at Cargill how he could apply for open positions before complaining that he was unaware of the opening. Plaintiff's legal memorandum does not address his interest in the Production Supervisor position, except for the statement that, "[t]o require this plaintiff to demonstrate an explicit interest in specific jobs would also be at odds with the purposes of the prima facie case in analyzing evidence." (ECF No. 58 at 15.)

Because Plaintiff has failed to satisfy the application requirement, Defendant is entitled to summary judgment as to Plaintiff's disparate-treatment claim based on failure to promote Plaintiff to Production Supervisor.

Plaintiff also cannot satisfy the fourth element of a prima facie case because the position of Production Supervisor was filled by Tricie Seawright, who, like Plaintiff, is African American. Therefore, Plaintiff's race-discrimination claim must fail as a matter of law. See Alexander v. Ohio State Univ. Coll. of Soc. Work, 429 F. App'x 481, 487 (6th Cir. 2011), cert. denied, 132 S. Ct. 528 (2011).[37]

---

[37] The Court declines to address Defendant's argument that Plaintiff cannot show that he was qualified for the position of Production Supervisor. (See ECF No. 56-1 at 11-13.) Although Defendant is correct that Plaintiff does not
(continued...)

In summary, Defendant is entitled to summary judgment on Plaintiff's claim of disparate treatment for both failure to promote Plaintiff to Lead Maintenance or Lead Person and failure to promote Plaintiff to Production Supervisor. The Court GRANTS Defendant's Renewed Motion for Summary Judgment as to Plaintiff's disparate-treatment claim. This claim is DISMISSED WITH PREJUDICE.

**B.    Retaliation Claims**

Under 42 U.S.C. § 2000e-3(a), it is unlawful for an employer "to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." The elements of a Title VII retaliation claim are as follows:

> (1) [the plaintiff] engaged in activity protected by Title VII; (2) the defendant knew of [his] exercise of [his] protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action.

Barrett v. Whirlpool Corp., 556 F.3d 502, 516 (6th Cir. 2009).

----

[37]    (...continued)
satisfy some of the listed qualifications, it is also undisputed that Seawright, the successful candidate, did not have the required "[m]inimum 2 years grain operations experience." Seawright had been a Production Supervisor at Cargill's President's Island Facility since February 2008 (see 2011 Brandstetter Aff. Ex. 2, ECF No. 57-7), less than two years before the opening occurred at the Second Street Facility. Cargill's job posting provides no guidance about how the company prioritizes the various qualifications. The Court also declines to address the issue of pretext.

There is no dispute that Plaintiff engaged in protected activity by filing a charge of discrimination with the EEOC on January 27, 2007, and by filing a joint complaint with the other Cargill employees in the Asbestos Litigation on January 14, 2008. These actions are protected activity under the "participation" clause. Niswander v. Cincinnati Ins. Co., 529 F.3d 714, 720-21 (6th Cir. 2008). There is also no dispute that Defendant was aware of that protected activity. (See ECF No. 57, ¶¶ 8-15.)

Defendant argues that Plaintiff cannot establish an adverse action. (ECF No. 56-1 at 15-16.) To establish his retaliation claim, Plaintiff must show that he was "discriminate[d] against" because of his participation in the previous lawsuit. 42 U.S.C. § 2000e-3(a). "[T]he term 'discriminate against' refers to distinctions or differences in treatment that injure protected individuals." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 59 (2006). The Supreme Court emphasized that

> "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

Id. at 67-68 (citation omitted) (internal quotation marks omitted).

Defendant first argues that Plaintiff cannot show that the failure to promote him to the position of Lead Maintenance was materially adverse because the position was never available. (ECF

No. 56-1 at 15-16.) A failure to promote cannot be materially adverse when there are no open positions. <u>Valent v. Summers</u>, No. 99-3209, 2000 WL 263347, at *5 (6th Cir. Mar. 2, 2000). It is undisputed that the position of Lead Maintenance at the Second Street Facility was held by George Richmond during all relevant times. <u>See</u> <u>supra</u> pp. 13-14.

Plaintiff also did not suffer an adverse action from Defendant's failure to promote him to the position of Production Supervisor. Plaintiff admits that he did not apply for the position of Production Supervisor, and there is no evidence in the record the Cargill even knew that Plaintiff was interested in a promotion or in that position. "Not receiving a promotion for which one did not apply would not dissuade a reasonable worker from engaging in protected conduct, and accordingly does not constitute a materially adverse action." <u>Vaughan v. Louisville Water Co.</u>, 302 F. App'x 337, 348 (6th Cir. 2008).

Defendant also claims that Plaintiff cannot establish the causation element of his prima facie case. (ECF No. 56-1 at 16-17.) "Causation is found where the plaintiff proffer[s] evidence sufficient to raise the inference that the protected activity was the likely reason for the adverse action." <u>Lindsay v. Yates</u>, 578 F.3d 407, 418 (6th Cir. 2009) (citation omitted) (internal quotation marks omitted) (alteration omitted); <u>see also</u> <u>Upshaw v. Ford Motor Co.</u>, 576 F.3d 576, 588 (6th Cir. 2009). "The burden of

proof at the prima facie stage is 'minimal'; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the protected activity and the retaliatory action." Upshaw, 576 F.3d at 588.

Closeness in time is one indicator of a causal connection between the plaintiff's protected activity and the adverse employment action. See Little v. BP Exploration & Oil Co., 265 F.3d 357, 364-65 (6th Cir. 2001). In retaliation cases, "a reasonable juror may infer a plaintiff's undertaking of a protected activity was the likely reason for the defendant's adverse action when the temporal proximity is 'very close.'" Lindsay, 578 F.3d at 419. Cases that have found the causation element to be satisfied *solely* by temporal proximity involve very short intervals between the protected conduct and the adverse action. See, e.g., Upshaw, 576 F.3d at 588-89 (finding that the close temporal proximity between plaintiff's August 2003 EEOC charge and employer's gathering of documentation to fire plaintiff in fall 2003 sufficient to establish "the causal nexus needed to establish a prima facie case of retaliation" (internal quotation marks omitted)); Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008) (holding that the fourth element of the prima facie case of retaliation was satisfied where the employee was fired the day employer learned of the protected activity).

In most cases, however, temporal proximity alone is insufficient to establish a causal connection. See, e.g., Arendale v. City of Memphis, 519 F.3d 587, 606 (6th Cir. 2008) (finding no inference of retaliation when the adverse action occurred two months after protected conduct). In those cases, the causation element can be satisfied by temporal proximity coupled with other evidence of retaliatory conduct. See, e.g., Hamilton v. Gen. Electric Co., 556 F.3d 428, 435-36 (6th Cir. 2009) (finding that evidence that employee was fired three months after he filed EEOC charge and that "his bosses heightened their scrutiny of him after he filed his EEOC complaint" supports an inference of causation); Caterpillar Fin. Servs., 496 F.3d at 596 (finding that the two-day interval between the filing of the Plaintiff's complaint and Plaintiff's placement on paid administrative leave, coupled with other evidence, was sufficient to infer causation).

As previously noted, Plaintiff filed his first charge of discrimination with the EEOC on January 29, 2007, and he filed the Asbestos Litigation on January 14, 2008. Cargill posted the position of Production Supervisor on its Career Marketplace on September 3, 2009, almost twenty months after Plaintiff filed the Asbestos Litigation. This interval is far too long to warrant an inference of causation on the basis of temporal proximity alone.

The only other evidence Plaintiff cites to support his retaliation claim is his perception that Cargill believes some

employees are "troublemakers." (Johnson Dep., ECF No 57-1, at 112:7-20; Pl.'s Facts, ECF No. 58-1, ¶ 59.) Plaintiff has cited no admissible evidence to support that proposition. "Subjective beliefs, without affirmative evidence, are insufficient to establish a claim of retaliation." Adair v. Charter Cnty. of Wayne, 452 F.3d 482, 491 (6th Cir. 2006); see also Mitchell v. Toledo Hosp., 964 F.2d 577, 584-85 (6th Cir. 1992) ("Even if the Court were to consider the Affidavit [submitted by the plaintiff], the statements contained therein are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish a claim of discrimination as a matter of law.").

Because Plaintiff has not established a prima facie case of retaliation, the Court GRANTS Defendant's Renewed Motion for Summary Judgment as to Plaintiff's retaliation claim based on failure to promote Plaintiff. This claim is DISMISSED WITH PREJUDICE.

Every claim asserted by Plaintiff having been dismissed, the action against Defendant is DISMISSED WITH PREJUDICE.[38] Judgment shall be entered for Defendant.

## V. APPEAL ISSUES

The Court must also consider whether Plaintiff should be allowed to appeal this decision in forma pauperis, should he seek

---

[38] The claims against the individual defendants under § 1981 and the THRA have previously been dismissed without prejudice.

to do so. The United States Court of Appeals for the Sixth Circuit requires that all district courts in the circuit determine, in all cases where the appellant seeks to proceed in forma pauperis, whether the appeal would be frivolous. Twenty-eight U.S.C. § 1915(a)(3) provides that "[a]n appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith."

Pursuant to the Federal Rules of Appellate Procedure, a non-prisoner desiring to proceed on appeal in forma pauperis must obtain pauper status under Federal Rule of Appellate Procedure 24(a) ("Rule 24(a)"). <u>See</u> <u>Callihan v. Schneider</u>, 178 F.3d 800, 803-04 (6th Cir. 1999). Rule 24(a) provides that if a party seeks pauper status on appeal, he must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the litigant must file his motion to proceed in forma pauperis in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good-faith standard is an objective one. <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). The test under 28 U.S.C. § 1915(a) for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. <u>Id.</u> The same considerations that lead the Court to

dismiss Plaintiff's claims compel the conclusion that an appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by Plaintiff would not be taken in good faith and Plaintiff may not proceed on appeal in forma pauperis. Leave to proceed on appeal in forma pauperis is, therefore, DENIED.[39]

**SO ORDERED** this 18th day of March, 2013.

s/ Jon P. McCalla
JON P. McCALLA
CHIEF U.S. DISTRICT JUDGE

---

[39]   If Plaintiff files a notice of appeal, he must also pay the full $455 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.